UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re: : | Case No.: 16-30870 (AMN) |
|    RUTH L. ELLIS : | Chapter 13 |
|    GLENN ELLIS : | |
|    *Debtors* : | |
| _____ : | |
| : | |
|    RUTH L. ELLIS : | |
|    GLENN ELLIS : | |
|    *Movants* : | |
| v. : | |
| U.S. BANK NATIONAL ASSOCIATION, : | |
| AS TRUSTEE FOR CITIGROUP, : | |
|    *Respondent* : | Re: ECF No. 19 |

**MEMORANDUM AND RULING AS TO**
**DEBTORS' MOTION TO DETERMINE CLAIM STATUS**

Before the court is a motion filed by Ruth L. Ellis and Glenn Ellis ("Mr. and Mrs. Ellis" or "Debtors") seeking an order determining the secured status of liens pursuant to 11 U.S.C. §§ 506(a) and (d) (the "§ 506 Motion") relating to real property known as 76-78 Sylvan Avenue, New Haven, Connecticut (the "Property"). ECF No. 19. A secured creditor – U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust 2007-WFHE2, Asset-Backed Pass-Through Certificates, Series 2007-WFHE2 ("U.S. Bank") – objected to the § 506 Motion on the basis that the Debtors undervalued the Property.

For the reasons that follow, the court finds for purposes of this § 506 Motion and the Debtors' chapter 13 plan that, (1) the value of the Property is $125,000.00; (2) the claim of U.S. Bank is bifurcated into a secured claim of $87,821.81 and an unsecured

1

claim of $122,062.80; and (3) the five judgment liens described hereafter are wholly unsecured.

## I. JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), 157(b)(1), 157(b)(2)(A), and 157(b)(2)(K), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I). Venue is proper before this court in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable in this proceeding pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## II. PROCEDURAL BACKGROUND

On June 6, 2016 (the "Petition Date"), Mr. and Mrs. Ellis filed a voluntary chapter 13 bankruptcy petition along with "Schedule A/B (Property)," valuing their interest in the Property at $75,000.00. ECF No. 1. The Property is a multi-family building containing two, three-bedroom apartment units. On September 27, 2016, U.S. Bank filed a proof of claim asserting a claim of $209,884.61 secured by a recorded mortgage on the Property. POC 12-1.[1] Mr. and Mrs. Ellis have not objected to POC 12-1.

On October 20, 2016, Mr. and Mrs. Ellis filed the § 506 Motion claiming that the Property was worth $75,000.00 and seeking a ruling that would: (a) pursuant to 11 U.S.C. § 506(a) bifurcate the first priority mortgage claim of U.S. Bank into a partially secured claim of $37,821.81 and a partially unsecured claim of $172,062.80; and (b) pursuant to

---

[1] Proof of Claim number 12-1 in the claims register of the case is referred to herein as POC 12-1.

2

11 U.S.C. § 506(d) avoid the U.S. Bank lien and five subsequent judgment liens to the extent they exceeded the Debtors' valuation for the Property. The Debtors' $75,000.00 valuation was based on an exterior appraisal dated February 28, 2016, used by the Connecticut Superior Court to enter a pre-Petition Date judgment of strict foreclosure in the matter entitled: *U.S. Bank National Association v. Ruth L. Ellis*, bearing docket number NNH-CV-14-6050589-S. ECF No. 19.

The § 506 Motion identified two statutory liens holding priority over the U.S. Bank mortgage that would remain unaffected by any order relating to the § 506 Motion:

1. A sewer lien in the amount of $18,939.31 in favor of the Greater New Haven Water Pollution Control Authority, as set forth in Proof of Claim No. 7; and

2. A water lien in the amount of $18,208.88 in favor of the South Central Connecticut Regional Water Authority, as set forth in Proof of Claim No. 8.

In accordance with 11 U.S.C. § 506(d), the Debtors also seek an order of the court determining that five (5) judgment liens are wholly unsecured and avoiding them in their entirety, including (and hereafter the "5 Judgement Liens"):

1. A judgment lien in favor of the Hospital of Saint Raphael in the amount of $1,660.00 plus costs of $35.00 dated November 21, 2008 and recorded in Volume 8315 at Page 314 of the New Haven Land Records;

2. A judgment lien in favor of HSBC Finance Corporation f/k/a HSBC Bank Nevada, N.A., in the amount of $5,162.80 plus costs of $367.00 dated March 30, 2010 and recorded in Volume 8523 at Page 149 of the New Haven Land Records;

3. A judgment lien in favor of Midland Funding, LLC in the amount of $2,003.99 plus costs of $75.00 dated April 7, 2011 and recorded in Volume 8684 at Page 153 of the New Haven Land Records;

4. A judgment lien in favor of Lynn Street, MD in the amount of $534.48 plus costs of $78.50 dated June 5, 2012 and recorded in Volume 8845 at Page 325 of the New Haven Land Records; and

3

5. A judgment lien in favor of Asset Acceptance, LLC in the amount of $2,292.20 dated June 4, 2014 and recorded in Volume 9155 at Page 85 of the New Haven Land Records.

U.S. Bank objected to the § 506 Motion claiming that the Debtors undervalued the Property and sought additional time to obtain an interior appraisal. ECF No. 20. U.S. Bank did not contest that the liens of the Greater New Haven Water Pollution Control Authority and the South Central Connecticut Regional Water Authority were prior in right to their claim.

On April 5, 2017, the court held an evidentiary hearing on the § 506 Motion. The court admitted into evidence Exhibit 1[2], a copy of the Connecticut Superior Court foreclosure judgment finding the value of the Property to be $75,000, based on an exterior appraisal. Both parties acknowledged the low probative value provided by the exterior appraisal and requested the court consider the expert testimony of their competing real estate appraiser experts: Joshua Martin (Mr. and Mrs. Ellis' expert) and John Valentine (U.S. Bank's expert). In addition, Exhibit 2, a copy of an interior appraisal report dated February 1, 2017 conducted by Joshua Martin and Exhibit A, a copy of an interior appraisal report dated November 16, 2016 conducted by John Valentine, were admitted.

### III. **APPLICABLE LAW AND BURDEN OF PROOF**

In the context of a chapter 13 bankruptcy case, a debtor may propose a plan that modifies the rights of a holder of a secured claim, except a debtor may not seek to modify a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). In the landmark case of *Nobelman v. American*

---

[2] The court employed the designation "plaintiff" and "defendant" rather than "movant" and "respondent" when identifying the exhibits at trial. The "Plaintiff" exhibits were offered by the movants (the Debtors) while the "Defendant" exhibits were offered by the respondent, U.S. Bank.

4

*Savings Bank*, 508 U.S. 324 (1993), the Supreme Court held that § 1322(b)(2) protected from plan modification all of the prepetition rights of a holder of a claim secured only by a security interest in the debtor's principal residence, rather than only its rights with respect to its allowed secured claim as determined pursuant to § 506(a). Justice Stevens noted in his concurring opinion in *Nobelman*, that § 1322(b) was meant to provide "favorable treatment [to] residential mortgagees [] to encourage the flow of capital into the home lending market." *Nobelman*, at 332 (1993). A question not addressed by *Nobleman* was the applicability of § 1322(b)(2) to multi-family buildings, where -- as here -- the debtor uses a portion of the property as his or her principal residence.

Courts within the Second Circuit have reached diverging conclusions on whether the anti-modification provision of § 1322(b)(2) precludes modification of a claim secured by a multi-family property in which the debtor also resides. *See In re Adebanjo*, 165 B.R. 9 (Bankr.D.Conn. 1994)(permitting bifurcation on a three-unit property containing the debtor's residence); *In re Del Valle*, 186 B.R. 347 (Bankr.D.Conn. 1995)(permitting modification of a two-unit property, where the debtor lived in one unit and rented the other); *In re Maddaloni*, 225 B.R. 277 (D.Conn. 1998)(because the property was used to produce income as well as to house the debtor's family, the anti-modification provisions of § 1322(b)(2) are inapplicable); *In re Kimbell*, 247 B.R. 35 (Bankr.W.D.N.Y. 2000)(court joins with the clear majority of Courts and holds that a mortgage secured by a multi-family structure where only one unit is used as the debtor's residence is not protected by the anti-modification provision of Section 1322(b))*; In re Moore*, 441 B.R. 732 (Bankr.N.D.N.Y. 2010)(where a mortgagee takes an interest in real property that includes, at the time of the transaction, income-producing rental property, the mortgage is secured

5

by property that is not only the debtor's principal residence and the claim may be modified later in a chapter 13 proceeding); *compare, In re Macaluso*, 254 B.R. 799 (Bankr.W.D.N.Y. 2000)(statute does not limit its application to property that is used only as a principal residence, but refers generally to any parcel of real property that the debtor uses for that purpose); *In re Brooks*, 550 B.R. 19 (Bankr.W.D.N.Y. 2016)(adopting the minority view that § 1322(b)(2) applies to property that serves as a debtor's principal residence and includes other rental units finding the existence of other uses on the property inconsequential); *In re Addams*, 564 B.R. 458 (Bankr.E.D.N.Y. 2017)(adopting a bright-line approach finding the definition of principal residence includes rents and therefore, § 1322(b)(2) applies).

Courts have also differed on whether cases should be decided using a so-called bright-line approach or on a case-by-case basis. *In re Brunson*, 201 B.R. 351 (Bankr.W.D.N.Y. 1996)(adopting a case-by-case approach that takes into account the totality of the circumstances and whether it was the predominant intent of the parties that the property be the debtor's principal residence); *compare, Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996)(adopting bright-line rule that in order for the anti-modification provision to apply the real property securing the mortgage must be *only* the debtor's principal residence); *In re Scarborough*, 461 F.3d 406 (3d Cir. 2006)(same).

Here, U.S. Bank did not raise as an objection that the anti-modification provision of § 1322(b)(2) applies. The court, therefore will assume, *without deciding*, that U.S. Bank's mortgage is capable of being modified pursuant to § 1322(b)(2).

If a claim is not protected by the anti-modification provision of § 1322(b)(2), a debtor may seek a judicial valuation of the collateral to determine the secured status of the claim pursuant to 11 U.S.C. § 506(a).  Section 506(a)(1) provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property.
> 11 U.S.C. § 506(a)(1).

Before analyzing to what extent a claim is secured pursuant to § 506(a), the court must consider, "the extent to which the claim is an 'allowed' claim."  4-506 *Collier on Bankruptcy* ¶ 506.03.  A claim, in turn, is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).  The allowance of claims is governed generally by 11 U.S.C. § 502, that in relevant part provides that a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."  11 U.S.C. § 502(a).

Federal Rule of Bankruptcy Procedure 3001 provides that a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim, unless and until an objection is filed.  11 U.S.C. § 502(a); Fed.R.Bankr.P. 3001(f); 9-3001 *Collier on Bankruptcy* ¶ 3001.09.  Once a claim has been deemed allowed pursuant to § 502, the court may evaluate, pursuant to § 506, whether, and to what extent, the allowed claim can be characterized as secured or unsecured.

7

The United States Supreme Court has explained that a creditor's interest in a debtor's property is measured as the value of the collateral securing the debtor's obligations. *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 199 (Bankr.S.D.N.Y. 2016)(*citing*, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988)); *see also*, 4-506 *Collier on Bankruptcy* ¶ 506.03. A court, making a determination of value pursuant to § 506(a), must consider two criteria: "(1) the purpose of the valuation, and (2) the proposed disposition and use of the collateral." *In re Valenti*, 105 F.3d 55, 62 (2d Cir. 1997). "The legislative history of § 506(a) confirms that the valuation methodology varies on a case-by-case basis, and that courts should take into consideration the facts and competing interests of each case." *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 199 (Bankr.S.D.N.Y. 2016)(*citing*, H.R. Rep. No. 95–595, at 356 (1977)).

In the context of a chapter 13 case, in which the debtor has proposed a plan to keep the collateral, the Supreme Court has directed that the proper standard to apply in valuing the collateral is its replacement value. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965 (1997); *see also*, 4-506 Collier on Bankruptcy ¶ 506.03. In *Rash*, the Supreme Court defined replacement value as the cost the debtor would incur to obtain a like asset for the same proposed use. *Rash*, 520 U.S. at 965. Where the purpose of the valuation is to determine the treatment of a claim by a plan, the value determined pursuant to § 506(a) must be compatible with the value that will prevail on the confirmation date. *In re Stanley*, 185 B.R. 417, 423-24 (Bankr.D.Conn. 1995).

Courts have regularly held that valuation of assets is "not an exact science." *In re Karakas*, No. 06–32961, 2007 WL 1307906 at *6 (Bankr.N.D.N.Y. 2007); *Boyce v.*

*Soundview Tech. Grp.*, 464 F.3d 376, 387 (2d Cir. 2006). Any judicial determination of fair market value of real estate is, at most, a fixing of a hypothetical price "at which [the real estate] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." *World Trade Center Props. LLC v. American Airlines, Inc. (In re September 11 Litig.)*, 802 F.3d 314, 335 (2d Cir. 2015) (*citing United States v. Cartwright*, 411 U.S. 546 (1973)). In light of the recognized subjectivity inherent in evaluating real estate, "courts have wide latitude in determining value." *In re Barbieri*, 2009 WL 5216963, Docket No. 00-22274-478, 2009 Bankr. LEXIS 4095, at *29 (Bankr.E.D.N.Y. 2009). "The court is not bound by the experts' appraisals and may form its own opinion of a property's value." *Menorah Congregation & Religious Ctr. v. Feldman (In re Menorah Congregation & Religious Ctr.)*, 554 B.R. 675, 692 (Bankr.S.D.N.Y. 2016). In the exercise of its discretion, the court should consider the experience, accuracy and general credibility of the expert witnesses. *In re Pod*, 560 B.R. 77, 80 (Bankr.E.D.N.Y. 2016).

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure specifies which party has the burden of proof proving valuation. In *In re Sneijder*, 407 B.R. 46, (Bankr.S.D.N.Y. 2009), the court determined that the secured creditor bore the burden of proof in establishing both the extent of its lien and the value of its collateral. *In re Sneijder*, 407 B.R. 46, 55 (Bankr.S.D.N.Y. 2009)(internal citations omitted); *see also, In re Residential Capital, LLC*, 501 B.R. 549, 590 (Bankr.S.D.N.Y. 2013)(the creditor bears the burden in the first instance of establishing the amount and extent of its lien under section 506(a)). Other courts place the burden of proof on the party challenging the value of a claim, usually the debtor. *In re Henry*, 457 B.R. 402, 405 (Bankr.E.D.Pa.

2011).  A third group of courts have applied a burden-shifting approach, pursuant to which "the debtor bears the initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim," but "the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim."  *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012); *see also, In re Serda*, 395 B.R. 450, 454 (Bankr.E.D.Cal.2008)(the chapter 13 debtor bore the initial burden of overcoming any presumption established by the value of her residence in mortgage lender's proof of claim).  As this § 506 valuation is requested in the context of the Debtor's proposed chapter 13 plan, the court finds that the burden-shifting analysis appropriate.

## IV. DISCUSSION

Mr. and Mrs. Ellis have not objected to the amount of U.S. Bank's POC 12-1 and the claim is allowed.  The parties' dispute centers on the Property's valuation to which the Debtors bear the initial burden of proof to overcome the characterization in the proof of claim that the entire debt is secured.  *See*, POC 12-1.

Mr. Valentine, U.S. Bank's expert, determined that the fair market value of the Property as of November 16, 2016, was $140,000.  Exhibit A.  In contrast, the Debtors' expert, Mr. Martin, concluded that the fair market value of the Property as of February 1, 2017 was $95,000.  Exhibit 2.  The court's valuation determination must be made in the context of the purpose for which it will be used.  Here the valuation is for purposes of considering confirmation of a chapter 13 plan.  The court notes that neither party submitted argument regarding the different dates of the competing appraisals.  As the

timing of the experts' opinions has not been placed in dispute, the court does not address it.

During the evidentiary hearing, the parties stipulated that both appraisers were equally experienced and qualified in valuing real estate. ECF No. 40 at 00:06:35 – 00:07:05.[3] Mr. Martin testified he has been real estate appraiser since approximately 2005. ECF No. 40 at 00:05:20 – 00:05:28. Mr. Valentine testified that he has been a certified residential appraiser for the last ten years. ECF No. 40 at 00:14:52 – 00:15:06. Both applied the Uniform Standards of Professional Practice adopted by the Appraisal Standards Board of the Appraisal Foundation. Exhibit 2 and Exhibit A. Both appraisers visited the Property and inspected its interior and exterior. ECF No. 40 at 00:07:06 – 00:07:30 and 00:15:28 – 00:15:45.

Despite the appraisers' qualifications and experience, the court notes that each appraisal contained unreliable or questionable elements. For instance, Mr. Martin arrived at his $95,000 valuation using the sales comparison approach that included the use of two sales – sales comparable number 1 and 4 - that, colloquially, are referred to as "REO" (real-estate-owned) sales. Exhibit 2 and ECF No. 40 at 00:19:00 – 0019:45. U.S. Bank's expert, Mr. Valentine testified that an REO sale is where a bank or lending institution is the owner/seller of the property after acquiring the property as a result of a foreclosure or other disposition by the previous mortgagor. ECF No. 40 at 00:19:00 – 0019:45. Mr. Valentine opined that the REO sales used by Mr. Martin were in greater disrepair than

---

[3] The court reviewed the audio file of the hearing using VLC Media Player. All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited testimony as follows: ECF No. ___ at hours:minutes:seconds.

the Property and if excluded from Mr. Martin's analysis, the resulting valuation would have been higher.  ECF No. 40 at 00:17:00 – 00:17:54; 00:19:00 – 00:19:40.  The court finds Mr. Valentine's testimony persuasive that the use of the "REO" sales as comparables resulted in a valuation lower than warranted.

The court also questions the reliability of Mr. Martin's appraisal because of his use of sale comparables that were greater than a mile away from the Property.  Specifically, comparable sale number 2 was 2.61 miles away and comparable sale number 3 was 1.35 miles away from the Property.  Exhibit 2.  The court finds that the further away the comparable sales are, the less indicative they are of the value of the subject Property.  Location is important; a property located two to three miles away may have different access to amenities or facilities, and different neighborhood characteristics.

On the other hand, all of Mr. Valentine's sales comparables were within less than a mile from the subject Property.  Exhibit A.  However, Mr. Valentine utilized a sale that was not located in the same town as the Property.  Comparable sale number 2 was located in West Haven, while the Property is located in New Haven.  Exhibit A.  Mr. Valentine afforded comparable sale number 2 -- the out-of-town sale -- the most weight in his analysis.  *See*, Exhibit A, Text Addendum.  The court finds that the use of a sale outside the subject Property's town is unreliable.  Too many factors affect the sale price of property from one town to the next, including without limitation, the school district, the town's real estate taxes and mill rate, and the available town services.

Additionally, the court finds that Mr. Valentine's appraisal does not accurately account for the condition of the roof.  Mr. Valentine's appraisal found the Property to be in average condition, noting that there was minor deferred maintenance.  Exhibit A.  No

12

specific mention was made of the condition of the roof. Mr. Martin, in contrast, viewed the roof as nearing the end of its life cycle and containing significant damage around the roofline. ECF No. 40 at 00:07:33 – 00:07:54. The court credits Mr. Martin's assessment of the condition of the roof. A prospective purchaser would consider the condition and age of the roof material and might seek to reduce the proposed price by the anticipated costs to make repairs. Since Mr. Valentine's appraisal does not account for the roof's condition, the court deems the $140,000 valuation too high.

## V. **CONCLUSION**

As required by § 506(a), the court must consider the proposed disposition or use of the property when determining value. Here, Mr. and Mrs. Ellis propose to retain the property and continue to reside in one unit and rent the other. Under such proposed use, Mr. and Mrs. Ellis would be responsible for the costs of all deferred maintenance and/or the cost of replacing the roof. After accounting for such costs and in light of the noted areas of unreliability in each of the appraisals and the inherent subjectivity that exists in valuing real estate, the court assigns the Property a value of $125,000 for the purposes of this motion seeking a determination pursuant to § 506(a) and (d).

After deducting the statutory liens of the Greater New Haven Water Pollution Control Authority in the amount of $18,969.31 and the South Central Connecticut Regional Water Authority of $18,208.88, the court finds that there remains $ 87,821.81 of value securing U.S. Bank's claim.

NOW THEREFORE, it is hereby

ORDERED, that, pursuant to § 506(a), U.S. Bank's claim shall be bifurcated into a secured claim of Eighty Seven Thousand, Eight Hundred Twenty One Dollars and

Eighty One Cents ($87,821.81) and an unsecured claim of One Hundred Thousand, Sixty Two Dollars and Eighty Cents ($122,062.80) for the purposes of the Debtors' chapter 13 plan; and it is further

ORDERED, that the five (5) judgment liens in favor of the Hospital of St. Raphael, HSBC Finance Corporation f/k/a HSBC Bank Nevada, N.A., Midland Funding, LLC, Lynn Street, MD, and Asset Acceptance, LLC, as described herein, are deemed to be wholly unsecured for the purposes of the Debtors' chapter 13 plan; and it is further

ORDERED, that a determination that any lien is avoided pursuant to 11 U.S.C. § 506(d) is reserved to the hearing on confirmation of the Debtors' chapter 13 plan.

Dated on August 28, 2017, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut